IN THE UNITED STATES DISTRICT Court
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ZEFFIE CHILDREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  2:14cv616-MHT |
| | ) | |
| CGI TECHNOLOGIES AND | ) | |
| SOLUTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The plaintiff Zeffie Childrey, now proceeding pro se,[1] brought this action against

her former employer CGI Technologies and Solutions (CGI) pursuant to 42 U.S.C. §

2000e-2 et seq., Title VII of the Civil Rights Act of 1964.  Title VII makes it "an unlawful

employment practice for an employer ... to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000-2(a)(1).

Childrey claims that CGI violated Title VII by subjecting her to sexual harassment and a

hostile work environment which ultimately resulted in her constructive discharge due to

intolerable conditions of employment.  Childrey further contends that after she first filed

an internal complaint about sexual harassment by a co-employee and later filed a charge

---

[1]Childrey was represented when this case was first filed.  The operative complaint alleged
state law claims in Counts III through V.  Those counts were dismissed in earlier proceedings.
(Doc. ## 68 and 71) The only remaining claims are Childrey's sexual harassment and retaliation
claims in counts I and II of her complaint.

of discrimination with the Equal Employment Opportunity Commission (EEOC) she was subjected to retaliation.  This Court has original jurisdiction over her claims under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), and 42 U.S.C. § 2000e–5(f)(3) (Title VII).

The case is now before the Court on the defendant's motion for summary judgment.  The plaintiff has filed a lengthy response to the motion accompanied by numerous exhibits, all of which the Court has reviewed.  Summary judgment should be granted in favor of the defendant CGI.

## THE SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][2] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(a) ("The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record,

---

[2]  Effective December 1, 2010, the language of Rule 56(a) was amended.  The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination."  FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must be support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

3

To survive the movant's properly supported motion for summary judgment, a party is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the

substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the Court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the Court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).  However, if there is a conflict in the evidence, "the evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this Court's disregard of elementary principles of production and proof in a civil case.

## BACKGROUND FACTS[3]

In its summary judgment brief, (Doc. # 91) CGI set forth facts about the nature of the company and its presence in Troy, Alabama, where Childrey worked. In her response to CGI's motion for summary judgment, Childrey agrees with these facts:

> 1. CGI Technologies and Solutions is a professional services company dedicated to providing IT solutions and business process outsourcing services to commercial clients and federal, state, and local government agencies. CGI is headquartered in Fairfax, Virginia and has locations throughout the country.
>
> 2. In January 2010, CGI opened its Onshore IT Services Delivery Center in

---

[3]"Even though the 'facts,' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case, . . . [the Court's] analysis for purposes of summary judgment must begin with a description of the facts in the light most favorable to the plaintiff." *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006) (quotation marks and citations omitted). Because the Court will discuss the salient facts relative to each claim within the discussion of the claim, the Court emphasizes that its description of the facts will follow this requirement. However, in some instances the parties agree that some facts are undisputed.

Troy, Alabama. The work in Troy includes high-level IT services (e.g., Applications Developers, Business Analysts, Database Administrators, Software Engineers, Systems Support Experts, User Support Analysts, Technical SMEs, Technical Architects, and various managers). Most of these roles support CGI's software development and testing, which serves CGI's clients. Some of them support client projects directly, and others provide internal support for CGI's development activities. Troy also has lower-level IT work comprised of IT/Help Desk Support Staff roles. Finally, the Troy office has work supporting collections work that has been outsourced by clients to CGI, as well as work in internal CGI functions that have been centralized in Troy to service all of the U.S. (e.g., some finance roles, some workforce management, some HR processing, and some internal IS-IT services).

3. CGI provides varying levels of IT services to a number of clients who outsource their internal technology needs, including Fannie Mae as the largest client serviced by that location. Some of those services are provided by the Level 1 IT Support/Helpdesk team, in addition to other teams out of our Troy, AL office. These roles are filled by IT Support Specialists.

4. Each of Fannie Mae's application portfolios (also sometimes referred to as a "BIO") is typically managed by a separate team, which is led by a supervisor. Some BIOs are combined. In addition, each team has a team lead. Generally, members of each team will use a specific skill set applicable for their specific BIO the support.

5. In April of 2012, CGI's Troy office hired a number people for the IT Support Specialist role for the L1 Fannie Mae group.

Childrey was hired by CGI on April 16, 2012, as an IT specialist for the BIO which provided support services for the Federal National Mortgage Association (Fannie Mae). Her supervisor at that time was Calvin Patterson. Lynn Engram was the overall manager for the BIOs supporting Fannie Mae operations.

The nature of the plaintiff's claims and the attendant facts do not admit of a broader factual overview. Thus, the Court will discuss the facts relevant to each of the

plaintiff's claims within the discussion of those claims.

## SEXUAL HARASSMENT CLAIM

On August 15, 2012, the plaintiff was leaving work at the same time as a coworker, Willie McCall.  At the bottom of a stairwell, McCall "grabbed" the plaintiff's buttock.  McCall then ran back up the stairs.[4]  After leaving the building, Childrey called her supervisor Calvin Patterson to tell him about the incident.  The next day a human resources representative from CGI contacted the plaintiff about the incident.  In addition to relating what happened during the stairwell incident, Childrey also told the representative about earlier occasions when she had to warn McCall that his romantic "advances" were not welcome.  The August 15, 2012, incident was the first time McCall touched Childrey.

Childrey told the representative that she wanted McCall to understand that his behavior would not be tolerated and had to stop, but she also said she could continue to work with McCall.  On August 17, 2012, the human resources representative issued a written warning to McCall about his actions and provided to Childrey a written report of the investigation of the incident.  The warning to McCall contained the following:

> CGI takes all such claims seriously and will not tolerate any findings of such behavior. After a thorough investigation by CGI, including a discussion with you, CGI has concluded that there are sufficient findings to show that your actions are in violation of the CGI EEO Policy, which is provided upon hire, posted on bulletin board and on the company intranet

---

[4]A video from a stairwell camera, while not showing McCall touching the plaintiff, does show him ascending the stairs at a slower pace than "running."  How fast McCall retreated is not material.

8

site (Connect), and is part of the mandatory Employment Law Training. As a result, we are providing you a formal written warning and request that you review the CGI EEO Policy and immediately adhere to it.

CGI is committed to ensuring that our work environment exemplifies our values, key among them respect, teamwork, and quality. It is particularly important that we all take the steps necessary to create and maintain a workplace that is positive and conducive to enabling member and client satisfaction. As a member of CGI, you are required to abide by all CGI policies and procedures as well as we expect you to perform to the standard of the CGI core values. Future inappropriate behavior of a similar nature may result in further disciplinary action, up to and including termination of employment with CGI.

(Doc. # 92-1 at 72)[5]

In addition, the letter required McCall to sign an "Investigation Confidentiality Agreement" in which CGI "encourages . . . [McCall] not to discuss this matter with anyone else" except his supervisors or human resources.

Prior to the incident on August 15, 2012, Childrey had made no complaints of sexual harassment. (Childrey Dep. Doc. # 92-1 at 4) Other than this single incident no one had ever done anything that Childrey considered sexual harassment.  (Childrey Dep. Doc. # 92-1 at 11)

In her brief in opposition to the defendant's motion for summary judgment, (Doc. # 108 at 9) Childrey states "this case is not focused around whether Willie grab the Plaintiffs butt or if Willie walked or ran up the stairs. This case is about the unlawful treatment Plaintiff received after her sexual harassment complaint, from

---

[5]Unless otherwise noted, page numbers are the numbers assigned to documents by the Court's electronic docketing system.

management and agents."  The Court does not view this statement as a concession that her sexual harassment claim lacks merit.  Therefore, the Court will address the claim.

To prevail on her hostile environment sexual-harassment claim, Childrey must present evidence of four elements: "(1) that ... she belongs to a protected group; (2) that [she] has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable."  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999).  Childrey's claim fails on both of the last two elements.

Whether harassing conduct is sufficiently severe or pervasive to alter the terms and conditions of a plaintiff's employment includes an objective and a subjective component. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). The plaintiff must subjectively perceive the environment to be abusive, and the conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment. *Id.* at 21 The Supreme Court has noted that "[w]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances," such as (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating; and (4) whether it unreasonably interfered with the employee's

work performance. *Id.* at 23.

McCall's conduct, while unquestionably objectionable, was not severe or pervasive and did not alter the terms or conditions of Childrey's employment. McCall's actions prior to August 15, 2012, were not reported by Childrey and did not involve any touching. The single incident in August lasted only for a short period of time. After reporting the incident, Childrey stated that she had no problem continuing to work with McCall. The totality of the circumstances do not support a conclusion that McCall's conduct rose to the level required to meet the fourth element of hostile environment sexual harassment claim.

The fifth element requires proof of a basis for holding CGI liable.[6] When the perpetrator of the harassment is a co-employee of the victim, the employer is liable only "if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1278 (11th Cir.2002). "When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining

---

[6]"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). The employer is strictly liable for the hostile environment if the supervisor takes tangible employment action against the victim. *See id.* at 807. However, when an employee has established a claim for vicarious liability where no tangible employment action was taken, a defending employer may raise as an affirmative defense to liability or damages: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* McCall, of course, was a coworker, not a supervisor.

employee follows those procedures, actual notice is established." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir.2003).  As recounted above, the undisputed facts show that CGI had a policy, Childrey followed that policy, and CGI took prompt remedial action.  In short, there is no basis for holding CGI liable for McCall's actions.  Childrey's hostile environment sexual-harassment claim fails; summary judgment in favor of the defendant on this claim is due to be entered.

## RETALIATION CLAIM

In her filings as well as in her deposition, Childrey recounts a number of incidents which she contends constitute unlawful retaliation.  Title VII's anti-retaliation provision states, in relevant part, that it is unlawful for an employer to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U .S.C. § 2000e–3; *Gowski v. Peake,* 682 F.3d 1299, 1311 (11th Cir.2012) (per curiam). Childrey has not produced any direct evidence of retaliation.  Absent direct evidence, when analyzing claims for retaliation, the Court employs the *McDonnell Douglas*[7] analytical framework. *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir.2009).  To establish a claim for retaliation under Title VII, an employee must prove that (1) she engaged in statutorily

---

[7]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

protected activity;[8] (2) she suffered a materially adverse action; and (3) some causal relation exists between the two events. *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1277 (11th Cir.2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405 (2006)).  In addition, a plaintiff must also demonstrate that the desire to retaliate was the "but-for" cause of the challenged employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* — U.S. —, —, 133 S.Ct. 2517, 2528 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533.  If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to proffer a legitimate non-retaliatory reason for the materially adverse action.  *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir.  2008). If the defendant proffers a legitimate non-retaliatory reason for its actions, the burden shifts back to the plaintiff to demonstrate that the proffered reason is merely pretext and that the real reason was retaliatory. *Id; see also Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir.2001) (setting forth the burden-shifting framework for a retaliation case).

Childrey's complaint about McCall's conduct satisfies the first prong of Childrey's prima facie case.[9]  The Court now turns to the remaining prongs.

---

[8]Childrey's complaint about McCall's actions in the stairwell obviously meet this requirement.

[9]Childrey filed an EEOC charge of discrimination in December 2012.  To the extent that any of her retaliation claims are based on that charge, her claim fails because she has not adduced any evidence showing that any CGI supervisor or employee was aware of that charge.

**Co-Employee Harassment.**  The first group of alleged retaliatory incidents involve actions by Childrey's fellow employees.  Childrey describes these incidents as her team members refusing to properly train her and leaving her alone intending to hurt her because she was still learning.   In addition, Childrey claims that her work area was sabotaged; someone loosened her chair; her desk drawers were "forced open," and her headset was broken.  Childrey admits she did not know who sabotaged her work area.

For several reasons, the Court concludes that these incidents, however boorish or immature, do not rise to the level of a materially adverse action.  Childrey has presented no evidence from which a reasonable jury could conclude that any desire by her employer to retaliate was the "but-for" cause of these challenged actions.  Indeed, Childrey presents no evidence that the incidents were directed by or because of any retaliatory animus on the part of her employer.[10]   The alleged retaliatory actions objectively are no more than petty annoyances insufficient to demonstrate materially adverse action.  *See Terrell v. Paulding County*, 539 Fed.Appx. 929, 934 (11th Cir. 2013) citing *Manatt v. Bank of Am.*, 339 F.3d 792, 803 (9th Cir.2003) ("[m]ere ostracism in the workplace is not grounds for a retaliation claim....") *See also Manley v. DeKalb County, Georgia*, 587 Fed.Appx. 507, 513 (11th Cir. 2014).

**"Inundated" With Work**.  Childrey claims that after she complained about

_____

[10]The Eleventh Circuit does not appear to have recognized co-worker harassment as a basis for a retaliation claim.  *See Lewis v. U.S. Dep't of Labor*, 368 Fed.Appx. 20, 30 (11th Cir.2010).  But, assuming this type of harassment is actionable these incidents do not rise to the level of harassment which would dissuade a reasonable worker from making or supporting a charge of discrimination.

McCall, she was "inundated" with work during on-call weekends.  (Childrey Aff., Doc. #

111 at 4; Doc. # at 42-43) This is how Childrey describes her difficulty.

> July 14, 2014,[11] my start time was 6am - 6pm, as soon as Ardrianna got off her shift at 6am, the tickets started flowing and they did not stop. They were false alerts, but I still had to follow procedure. I was not in a good sitting position and bent over with Laptop on a low flat screen TV stand. Then Jeremy Strickland, sent an email regarding updating a Web page html information. Which he has never sent this request before. These request came from a Michael, and they had to start creating Change Request (CRQ) tickets prior to the date so our team would know what to do ahead of time. The information for the change on the Web page is provided in the ticket.
>
> I'm still getting tickets and Remedy is slow. Sent an email to L2 regarding the false alerts. Based on what I know when maintenance is going to be done on a Web page, they would put up blockers, prevent getting the false alerts, this was not done. The tickets still coming and Remedy is slow, then I started putting some in pending. Made change to Web page. Then Jeremy reached out and said not to make that change. He was going back and forth changing when I had done about two (2) three (3) times. At that moment I knew something was not right. I was stuck in that position for almost 9hrs. I was in tears, thinking this women is trying to control me at home.

(Doc. # 109-1 at 109)

This aspect of Childrey's retaliation claim first founders on the second prong of

the requirements of a prima facie case.  Generally, harsh or difficult working conditions

are not materially adverse actions because they do not result in some tangible, negative

effect on the plaintiff's employment.  See *Shotz v. City of Plantation, Fla.,* 344 F.3d 1161,

---

[11]The Court finds that this date is a typographical error in the original.  Childrey resigned in December 2013.  The other sequential dates in the document which is much like a daily diary are in 2013.  The Court treats this as July 14, 2013.

1181–83 (11th Cir.2003) (requiring a "material" adverse action).[12]  Moreover, Childrey has not shown that the volume of work was caused or orchestrated by her employer rather than the company's customers.  Childrey has not shown that her work assignments were different from other employees.  Childrey's retaliation claim also fails on the causation prong of her prima facie case.  Her complaint about McCall's harassment of her was made to her employer on August 15, 2012.  To establish a causal connection, a plaintiff must show that the protected activity and adverse action were not wholly unrelated. *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir.2013). A plaintiff may demonstrate the necessary causation between the protected expression and an adverse action if they are in "close temporal proximity." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir.2004). Here, almost one year passed between Childrey's complaint and the work situation which she viewed as retaliatory.  That is too long to show any relationship.  Childrey's retaliation claim fails.

**The Profile and Blackberry Issues.[13]** The plaintiff was assigned to a team which worked only for Fannie Mae.  Every Fannie Mae team member had a Service Online (SOL) Profile which controlled their access to Fannie Mae's projects and systems. The

---

[12]Of course, the Court recognizes that in some contexts retaliatory work assignments can be materially adverse actions because an employee may be dissuaded from bringing a discrimination charge if they are assigned more arduous duties. *See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53,* 70-71(2006).  Childrey has not shown that assignments to her were anything out of the ordinary.

[13]The facts set forth here are undisputed.  *See* Pl. Br., Doc. # 108 at 15-18.

16

plaintiff accessed Fannie Mae's projects and systems through her SOL profile.  In November 2012, Childrey's profile was disabled, and she could not access the network to perform her work.  This situation was corrected within several days.  During this time the plaintiff also began to experience problems with her Blackberry.

The undisputed evidence shows that the "SOL profiles are set up and controlled by Fannie Mae . . . " which also "controls what uses are included on the Blackberry devices and whether the devices have talk features." (Doc. # 92-2 at 3) When Childrey reported her problems with these devices, the problems were corrected.

Childrey believes that her SOL profile was disabled by her supervisors who knew about her complaint about McCall.  Childrey's belief is not supported by evidence within the meaning of FED. R. CIV. P. 56.  Childrey's deposition testimony reveals that she believes her supervisors were "tampering" (Doc. # 92-1 at 28; Childrey Dep. At 106) with her device and profile.  But even a liberal reading of Childrey's deposition discloses that her belief is based only on supposition.  Childrey did file in support of her opposition to the defendant's motion for summary judgment the affidavit of Stephanie Moore.  Moore declares that "to her knowledge, no one on our team had the power to enable or disable profiles except management . . . " But Moore does not explain the basis of her knowledge or how she was in a position to know who had the ability to disable a profile.

Childrey's retaliation claim premised on problems with her profile and Blackberry fail for several reasons.  She has not shown a close temporal proximity between her

complaint and the profile disabling and the Blackberry problems sufficient to establish a causal connection.  Those difficulties occurred in late November 2012 which is more than three months after she complained about McCall.  *See Drago v. Jenne,* 453 F.3d 1301, 1308 (11th Cir.2006).  When she notified her supervisors about the problems, they were corrected.  These problems are not materially adverse actions.  Rather, they are merely the annoyances which are common for anyone who works with electronic devices and computer networks.

**Working From Home; Denial of Leave Request and Short Term Disability.**

Childrey alleges in her complaint that

Beginning in 2013, when Childrey's health began to suffer from the employer's retaliation, the employer refused to accommodate her declining physical condition, refused to approve her to work from home, refused to approve her leave, and hampered her ability to receive short term disability in a timely manner.

(Compl. at ¶ 21 I, Doc. # 47)

Again, Childrey's retaliation claim fails for several reasons.  These incidents are not closely related in time to her August 2012 complaint, and she has come forward with no other evidence showing that a causal relationship exists.  But, with regard to the leave and disability issues, there is a more salient reason.  In its brief in support of its summary judgment motion, CGI sets forth factual statements about these issues.

93.   CGI provides paid sick leave to its employees in increments of 10 consecutive work days. On the 11th day, if the employee is unable to return to work due to a medical condition, she must apply for short-term disability ("STD") and provide medical documentation from her physician verifying

18

her inability to return to work in order to continue taking a paid leave of absence. (Mitchell Dec. at ¶ 20). In addition, the employee can also apply for job-protected FMLA leave; however, FMLA leave runs concurrent with any approved STD leave, and so, by itself, it is not paid. (Id. at ¶ 20). To take FMLA leave, the employee must submit medical certification from her physician verifying that her leave qualifies as FMLA leave. (Mitchell Dec. at ¶ 20).

94.     An independent, third-party carrier, CIGNA, handles all short-term disability requests made by CGI employees at the Troy office. (Mitchell Dec. at ¶ 21). CIGNA determines whether employees qualify for short term disability benefits. CIGNA determines what medical documentation is needed from the employee's physician. (Mitchell Dec. at ¶ 21).

95.     The plaintiff was allowed to take 10 consecutive days of paid sick leave. (Plf. Dep. 150:5-11).

96.     The plaintiff then applied for short-term disability through CIGNA; however, she withdrew her application so she could utilize her accrued vacation leave and receive her accrued vacation pay. (Plf. Dep. 152:1-153:10). Plaintiff received her accrued leave pay approximately one month later. (Plf. Dep. at 153:14-17). The plaintiff did not reapply for short-term disability leave. (Plf. Dep. 153:19-20).

97.     The plaintiff then requested to take FMLA leave; however, her physician never submitted the required medical certification needed for her FMLA request to be approved. (Plf. Dep. 153:22-155:20).

98.     Plaintiff has no idea why her physician failed to provide her medical certification to CGI. (Plf. Dep. 155:8-10).

99.     On November 26, 2013, CGI Leave Administrator, Amy Lewis, sent an email to the plaintiff informing her that she needed the FMLA medical documentation form completed as quickly as possible or the plaintiff would need to return to work. (Ex F - Emails between Plf. & Lewis, D-0255). The plaintiff responded on November 27, 2013, stating that she would follow up with her physician about the missing medical documentation and get back with Lewis on December 2, 2013. (Id.).

(Doc. # (91 at 20-22) (footnote omitted)

In her brief filed in opposition to CGI's motion for summary judgment, Childrey says she "agree[s] that the factual statement contained in [these] paragraph[s] are undisputed." (Doc. # 108 at 23-24) That agreement totally undercuts her claims. She took leave;[14] she withdrew her disability request, and neither she nor her physician completed the documentation needed for her FMLA request. She has presented no facts supporting her contention that the defendant in any way "hampered" her disability claim.

That leaves for consideration Childrey's claim that disapproval of her requests to work from home was retaliatory. Childrey first asked to work from home in early 2013 because she had a problem with her car. Her claim that disapproval of this request was retaliatory is premised on her contention that other employees were allowed to work from home. Simply put, this aspect of Childrey's claim fails because the evidence is undisputed that employees in her category were expected to work in the office except for medical reasons. (Doc. # 91 at 19, ¶ 87; Doc. # 108 at 22, ¶ 87) Childrey has not shown that there is any causal relationship between disapproval of her request and her complaint about McCall. Requiring Childrey to adhere to the requirements of the job is not an adverse action.

_____

[14]In Childrey's amended complaint, there is no mention of disapproval of a vacation request as a retaliatory action. However, in her brief in opposition to CGI's motion for summary judgment she claims that her supervisors denied a request for vacation time in January 2013 as part of the retaliation against her. The Court will not consider this contention. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.").

In October 2013, more than a year after the incident with McCall, Childrey asked to work from home because of a medical condition. A CGI human resources consultant informed her that her request would be considered if she could provide medical information establishing she had a disability, needed an accommodation and the ability to perform the essential functions of the job with the accommodation. Childrey was given the proper forms to complete but did not submit those forms. These undisputed facts show that Childrey was not subjected to a materially adverse action. CGI representatives initiated the accommodation process in response to her request, but Childrey failed to complete the process. Her retaliation claim in this regard fails.

**Scheduling Problems.** Childrey complains that in retaliation for filing the complaint about McCall her supervisors "manipulated" her schedule and changed her hours including making her work consecutive shifts.[15] Childrey has presented no evidence that she was treated any differently than other employees. Thus, generally she has not shown that the schedule changes were any thing other than normal incidents of work;[16] thus, she fails to show the changes were materially adverse.

---

[15]In late 2012, Childrey's team lead, Benjamin McCall, scheduled her to work consecutive shifts. Childrey admits (Doc. # 108 at 15, ¶ 48) that Benjamin McCall did not know about her complaint. Thus, his actions could not have been retaliatory. *See . Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir.2013) (Prima facie retaliation claim requires a showing that the decision maker was aware of the protected conduct).

[16]For example, when Childrey was first hired she worked the 8:00 a.m. to 4:00 p.m. shift; everyone else's hours "rotated" or changed. (Doc. # 92-1 at 18) After some time but possibly before August 15, 2012, she began to rotate. Childrey appears to believe that requiring her to rotate like other employees was a form of retaliation. Plainly, it was not because in no

There is one scheduling issue which deserves specific attention.  As part of her work, the plaintiff was required to work from home on-call during specified weekends. An on-call shift lasted 12 hours, after which another employee began their on-call shift working from their respective home.  Beginning in September 2012, Childrey was scheduled to work an on-call weekend.  When the schedule was published, she noticed that Willie McCall was also scheduled to work the same weekend.  Childrey perceived this as retaliation.[17]  The undisputed evidence shows that Childrey and McCall worked from their homes and had no physical interaction.  It was possible they might have to communicate by telephone or e-mail at the time their shifts changed over. (Doc. 92-1 at 21)

Under the circumstances of this case, the Court concludes that scheduling Childrey to work on the same weekend as McCall does not constitute retaliation.  They did not work the same hours; they did not work in the same location, and any need for communication between them was minimal.  As already noted, when Childrey was interviewed by a CGI human resources representative after reporting McCall touching her, she told the representative she could continue to work with him.  Childrey also

---

reasonable manner can requiring her to rotate like other employees be characterized as an adverse action.

[17]In her deposition, Childrey said "Yes, it is weekend on-call work. And as you can see from this, the way it was slated, they put me with Mr. Willie September, October, November, December. Because there is no one else -- and I'm sure -- I can't be definitive on this, they went to him and said I don't want to work with her, put her with him since she wants to complain on him." (Doc. # 92-1 at 21).

admitted that after the single incident, McCall never did anything wrong.  For all these reasons, the Court finds that requiring Childrey to work on the same weekend as McCall was not a materially adverse action.  Her retaliation claim in this regard fails.

**Time Sheet Approval**.  Childrey was required to submit weekly timesheets reflecting the number of hours she worked each day and the hours of leave time taken. Her timesheets were then reviewed by management for accuracy, and the hours worked were billed to the client.  Sick leave is not included in the number of hours worked, and if it is included in the hours worked, the timesheet must be adjusted. (Doc. # 91 at 15; Doc. # 108 at 18) Sick leave is not treated as time worked for the purpose of calculating overtime.  (Doc. # 91 at 16; Doc. # 108 at 19)

In her complaint, Childrey alleges that "[i]n December of 2012, Robert Patterson refused to approve Childrey's time sheet. Patterson tried to decrease overtime pay by substituting sick leave."  This is how she described the claim in her deposition.

> Okay. I want to say that was around November, December when I worked all that overtime.  And at that point I had started getting sick and I took a sick day. And I can't say whether the sick day was in the same week I did the overtime or the other week or if those two weeks are put together. He had me to remove -- I think I would have had something like eleven point something overtime but I had to replace -- take eight hours of that away, so it left me with like three hours of overtime.

(Doc. # 92-1 at 123, Childrey Dep. At 123)

Childrey's testimony coupled with her agreement that sick time is not treated as time worked for the purpose of calculating overtime (Doc. # 91 at 16; Doc. # 108 at 19)

demonstrates that her claim lacks merit.  In accord with CGI policy her sick time was not used to calculate her overtime.  She did not suffer an adverse action.

**Transfer Request**.  In her complaint, Childrey alleges that as part of the retaliation against her Benjamin McCall "denied a work transfer request." (Doc. # 47 at 4) She further alleged

> Childrey sent a request to Calvin Patterson to be moved away from Willie McCall and other team members who were mistreating her following her report of harassment HR declined her request. Instead, HR moved her entire team to work under the leadership of Robert Patterson, with Benjamin McCall, Willie McCall's son, as the designated team leader.

(Doc. # 47 at 4)

CGI responds to this claim by pointing out that they honored Childrey's request in February 2013, when she was transferred to another team. (Doc. # 91 at 16) Childrey contends that because her request was not honored immediately, "they allowed and subjected her to a retaliatory hostile environment." (Doc. # 108 at 20)

Childrey's immediate transfer retaliation claim fails first because she has not show any causal relationship between her August 2012 complaint about McCall and any delay in granting her a transfer.  Secondly, it fails for the straightforward reason that she has not adduced any evidence showing that "but for" her complaint about McCall she would have been immediately transferred.  *See Nassar, supra*.  In reaching this conclusion, the Court is cognizant of the way in which Childrey frames her claim which is dependent on her view that collectively all of the treatment of her amounted to retaliation.  And that, of course, is

consistent with the law of this Circuit which holds that the cumulative weight of numerous individual incidents can be considered in determining whether an employee experienced materially adverse action.  *See* *Shannon v. Bellsouth Tele., Inc.,* 292 F.3d 712, 716 (11th Cir.2002).  Considering Childrey's claims cumulatively dovetails nicely with her final claim, the constructive discharge claim.[18]

**Constructive Discharge**.  Childrey alleges in her complaint that due to the harassment she experienced, her "working conditions became so intolerable that in December 2013, she resigned from the employer." (Doc. # 47 at 5)  To state a claim for hostile work environment under Title VII's retaliation provision, a plaintiff must allege that (1) she engaged in protected activity; (2) after doing so, she was subjected to unwelcome harassment; (3) the protected activity was the but-for cause of the harassment; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and to create an abusive work environment. *Gowski v. Peake*, 682 F.3d 1299, 1311–13 (11th Cir.2012). "Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir.2009). Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces her to quit her job. *Id.* A plaintiff must show the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to

---

[18]The court recognizes that cumulative consideration of Childrey's retaliation claims is governed by a less strict standard than her constructive discharge claim.

resign. *Id.*  A constructive discharge claim is not a jury question unless a plaintiff presents substantial evidence that employment conditions were intolerable. *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir.2002). An employee must show that his working conditions were so difficult that a reasonable person would have felt compelled to resign. *Id.* at 1161 n. 30. In assessing constructive discharge claims, the Court does not consider a plaintiff's subjective feelings about her employer's actions, but whether a reasonable person in the plaintiff's position would be compelled to resign. *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir.1998).

There is no doubt that Childrey perceived all of the events addressed here as harassment.  But her subjective feelings do not carry the day.  Even considered cumulatively all of the slights and annoyances she experienced do not rise to the level of unlawful retaliation and are certainly not conditions which objectively made her workplace intolerable.  As recounted here, aside from the slights by her fellow employees, all of the difficulties she encountered are the travails of a normal work environment. When she experience problems with her equipment, her supervisors acted to correct the problems, and there is no evidence that she suffered any adverse consequences.[19] Childrey was distressed that her employer would not let her count sick leave hours towards overtime, but her employer's insistence on adherence to company policy is not

---

[19]When she reported that her SOL profile was not accessible, one of her supervisors mentioned something to the effect that she had been fired.  While insensitive, the comment carried no weight; Childrey was not fired.

retaliatory by any measure.  When Childrey's schedule was changed, there is no evidence supporting a view that she was treated differently from other employees; thus, those actions cannot be adverse.  When she asked to work from home because of medical reasons, she was informed about how to provide information to support the request, but she did not follow through.

The Court has considered all of Childrey's extensive filings in support of her contentions, but those documents do not support a conclusion that she suffered actionable retaliation or that the various incidents would not have happened but for her filing complaints.  Her allegations about retaliatory harassment are based on her subjective beliefs but have no objective basis in fact.  Likewise, for the same reasons, Childrey's working conditions objectively were not so intolerable that a reasonable person would have felt compelled to resign.  In short, the Court concludes that Childrey's retaliation and constructive discharge claims fail.  Summary judgment should be entered in favor of the defendant.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion for summary judgment be granted and that this case be dismissed with prejudice with costs taxed against the plaintiff.

It is further

ORDERED that **on or before March 21, 2016**, the parties may file objections to the Recommendation.  Any objections filed must specifically identify the findings in the

Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised this Recommendation is not a final order; therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 7th day of March, 2016.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE