IN THE UNITED STATES DISTRICT Court
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ZEFFIE CHILDREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO.  2:14cv616-MHT |
| | ) | (WO) |
| CGI TECHNOLOGIES AND | ) | |
| SOLUTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

On September 29, 2017, this matter was referred back to the undersigned for consideration of the plaintiff's retaliation claim.  *See* Doc. # 118.  Her sole remaining claim is that she was subjected to retaliation after she complained about sexual harassment by a co-worker.  Specifically, Childrey asserts that the defendant "transferred [her] in October 2012 to work under the authority of Benjamin McCall and others" in retaliation for her complaint and in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq.  *See* Doc. # 118 at 2.  The court has jurisdiction of the plaintiff's claim pursuant to its federal question jurisdiction, 28 U.S.C. § 1331, and the jurisdictional grant contained in 42 U.S.C. § 2000e–5(f)(3).

The case is now before the Court on the defendant's renewed motion for summary judgment on the plaintiff's remaining retaliation claim.  *See* Doc. # 120.  The plaintiff has

filed a response to the motion.[1]  *See* Docs. # 124 & 125.  After careful review, the court

concludes that summary judgment should be granted in favor of defendant CGI on Childrey's

retaliation claim.

## THE SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the   pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine [dispute[2]] as to any material fact and that the moving party is entitled to judgment

as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th

Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(a) ("The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law.").  The party moving for

summary judgment "always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of the [record, including pleadings,

discovery materials and affidavits], which it believes demonstrate the absence of a genuine

[dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant

may meet this burden by presenting evidence which would be admissible at trial indicating

there is no dispute of material fact or by showing that the nonmoving party has failed to

---

[1]  In her response, Childrey also argues that she was subjected to sexual harassment, a hostile work
environment and she was constructively discharged. Those claims have been resolved by the court.  *See* Doc.
# 118.

[2]  Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute"
replaced the word "issue" to "better reflect [ ] the focus of a summary-judgment determination." FED. R. CIV.
P. 56(a), Advisory Committee Notes, 2010 Amendments.

present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322–324.

Once the movant meets its evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Celotex*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also* FED.R.CIV.P.  56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

To survive the movant's properly supported motion for summary judgment, a party is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id.* at 249-250. "A

mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) (quoting *Anderson*, *supra*). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).  Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th

Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).  However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *Brown v. Crawford*, 906

5

F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate

this court's disregard of elementary principles of production and proof in a civil case.

## FACTS[3]

As set forth in the Recommendation entered on March 7, 2016, the following basic

facts are undisputed.

1. CGI Technologies and Solutions is a professional services company dedicated to providing IT solutions and business process outsourcing services to commercial clients and federal, state, and local government agencies. CGI is headquartered in Fairfax, Virginia and has locations throughout the country.

2. In January 2010, CGI opened its Onshore IT Services Delivery Center in Troy, Alabama. The work in Troy includes high-level IT services (e.g., Applications Developers, Business Analysts, Database Administrators, Software Engineers, Systems Support Experts, User Support Analysts, Technical SMEs, Technical Architects, and various managers). Most of these roles support CGI's software development and testing, which serves CGI's clients. Some of them support client projects directly, and others provide internal support for CGI's development activities. Troy also has lower-level IT work comprised of IT/Help Desk Support Staff roles. Finally, the Troy office has work supporting collections work that has been outsourced by clients to CGI, as well as work in internal CGI functions that have been centralized in Troy to service all of the U.S. (e.g., some finance roles, some workforce management, some HR processing, and some internal IS-IT services).

3. CGI provides varying levels of IT services to a number of clients who outsource their internal technology needs, including Fannie Mae as the largest client serviced by that location. Some of those services are provided by the

---

3   At this stage of the proceedings, consistent with FED. R. CIV. P. 56, the court takes evidence presented by the non-movant as true and construes the facts in the light most favorable to Childrey.  *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party' and 'resolve all reasonable doubts about the facts in favor of the nonmovant.' Moreover, the court must avoid weighing conflicting evidence or making credibility determinations.  Instead, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'").

Level 1 IT Support/Helpdesk team, in addition to other teams out of our Troy, AL office. These roles are filled by IT Support Specialists.

4. Each of Fannie Mae's application portfolios (also sometimes referred to as a "BIO") is typically managed by a separate team, which is led by a supervisor. Some BIOs are combined. In addition, each team has a team lead. Generally, members of each team will use a specific skill set applicable for their specific BIO the (sic) support.

5. In April of 2012, CGI's Troy office hired a number people for the IT Support Specialist role for the Ll Fannie Mae group.

Childrey was hired by CGI on April 16, 2012, as an IT specialist for the BIO which provided support services for the Federal National Mortgage Association (Fannie Mae). Her supervisor at that time was Calvin Patterson. Lynn Engram was the overall manager for the BIOs supporting Fannie Mae operations.

(Doc. # 112 at 6-7).

Other pertinent facts are as follows. On August 15, 2012, Childrey was leaving work at the same time as co-worker Willie McCall. At the bottom of a stairwell, McCall "grabbed" Childrey's buttock. (Doc. # 109, Ex. G, Pl. Aff. at 13, ¶ 22). Childrey called her supervisor Calvin Patterson and reported McCall's behavior. (*Id.*)

The next day a human resources representative from CGI contacted the plaintiff about the incident. (*Id.* at ¶ 23) Childrey explained what happened and told the representative about earlier incidents when she warned McCall repeatedly that his "advances" were unwelcome. (*Id.*). Childrey told the representative that she wanted McCall to understand that his behavior would not be tolerated and had to stop, but she also said she could "move forward as a colleague." (*Id.* at ¶ 25).

7

Beginning in June or July 2012, Childrey's working relationship with her entire team began to deteriorate.  (Doc. # 92, Ex. A at 46-47).  After her complaint about McCall, the contentious relationship with her teammates escalated.  (*Id*. at 48).  On October 2, 2012, Childrey asked her supervisor, Calvin Patterson, to move her to another team.  (*Id*. at 20, ¶ 54). On October 8, 2012, Childrey's team was placed under the supervision of Robert Patterson. (*Id*. at 22, ¶ 58).  In addition, Willie McCall's son, Benjamin McCall, was designated as a team leader under Robert Patterson.  (*Id*. at 22-23, ¶ 60-61).

On December 8, 2012, Childrey contacted the EEOC to file a charge of discrimination in which she complained about Willie McCall's sexual harassment and that she was being subjected to a hostile work environment.  (Doc. # 190-6 at 153).  It is not at all clear in her communication with the EEOC that she contended that the change in her team's supervisor and team leaders was in retaliation for complaining about McCall's conduct.  (*Id*.).

CGI responded to the EEOC.

CGI does not dispute that [Childrey] complained to her supervisor, Calvin Patterson, that Willie McCall, co-worker, touched her buttocks in August 2012. CGI immediately addressed the matter and issued Mr. McCall a written warning within two business days of [Childrey's] complaint.  Human Resources notified [Childrey] of the disciplinary action and specifically told her to inform them if she had any subsequent issues with Mr. McCall. There have been no incidents, behaviors, or complaints to reflect inappropriate conduct by Mr. McCall since he was formally disciplined. . . . In October 2012, [Childrey's] entire team received a new supervisor, Robert Patterson, and Mr McCall's sone was one of the team leads in the group.  Mr. McCall's son does not have any authority to change or influence the terms and conditions of [Childrey's] employment. [Childrey] has not formally or informally told Human Resources or management that Mr. McCall's son or anyone else has retaliated against her for any reason. Special care was taken by Human Resources to minimize the number of persons made aware of

[Childrey's] initial complaint. . . . [Childrey] cannot establish a prima facie case of retaliation. . . .

(Doc. # 109-6 at 171)

Childrey replied to CGI's response in part agreeing "that Mr. McCall's sexually offensive behavior stopped after she reported him," and that "Mr. McCall's son did not engage in retaliatory or offensive behaviors around [her], but she was concerned that he purposely placed his laptop bag in the floor so that she would be forced to step over it when leaving her desk." (*Id.* at 172). She made no other allegations of retaliation related to the change in her team's supervision.

On February 13, 2013, Childrey filed a charge of discrimination with the EEOC alleging sex discrimination and retaliation. Her charge in its entirety reads as follows.

My sex is female. I began my employment with the above named employer on April 16, 2012, as an IT Support Specialist. I perform my duties in a satisfactory or better manner. On August 15, 2012, I reported to Calvin Patterson that Willie McCall, sexually harassed me by touching me on my buttocks. I also informed Mr. Patterson that I have had to repeatedly ask Mr. McCall not to sexually harass me. I have always made it known to Mr. McCall that his sexual comments and actions were unwelcome. After I complained about the sexual harassment I feel my co-workers are harassing me and treating me in a hostile manner. No one would trade shifts with me and my requests for vacation time have been denied. I have been denied opportunities to advance within the company. After I complained about the harassment I was supposed to be moved away from the team working with Mr. McCall. I would be placed under Mr. McCall's son who is a team leader.

I believe I am being sexually harassed and retaliated against because I complained of the harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Doc.# 109-71 at 3).

On December 1, 2013, Childrey resigned her position due to "intolerable working conditions." (Doc. # 109-6 at 73).

## DISCUSSION

The only remaining claim before the court is Childrey's retaliation claim pursuant to Title VII. Under Title VII, an employer is prohibited from retaliating against an employee who has either (1) opposed an employment practice made unlawful under Title VII or (2) made a charge, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).[4] Liberally construing her complaint, Childrey contends that her transfer in October 2012 to work under the authority of Robert Patterson and Benjamin McCall constitutes retaliation for complaining about sexual harassment.

In order to establish a *prima facie* case of retaliation, Childrey must demonstrate that (1) she participated in statutorily protected expression; (2) she suffered a materially adverse employment action; and (3) there is some causal relationship between the two events.[5] *Trask v. Sec., Dep't of Veterans Affairs*, 822 F.3d 1179, 1193-94 (11th Cir. 2016); *Clemons v. Delta Air Lines, Inc.*, 625 F. App'x 941, 944 (11th Cir. 2015). "[A] plaintiff making a retaliation claim

---

[4] Title VII provides, in pertinent part:

It shall be an unlawful employment practice for an employer to discriminate against any individual . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

[5] Childrey has not produced any direct evidence of retaliation.

10

under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. —, —, 133 S.Ct. 2517, 2534 (2013).

> Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.

*Id.* at 570 U.S. at —, 133 S.Ct. at 2533. *See also Trask*, 822 F.3d at 1194.

If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to proffer a legitimate non-retaliatory reason for the materially adverse action. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008). If the defendant proffers a legitimate non-retaliatory reason for its actions, the burden shifts back to the plaintiff to demonstrate that the proffered reason is merely pretext and that the real reason was retaliatory. *Id; see also Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001) (setting forth the burden-shifting framework for a retaliation case).

There is no dispute that Childrey can establish that she engaged in statutorily protected activity when she complained to CGI about McCall's sexual harassment.[6] However, CGI asserts that Childrey's retaliation claim fails because she cannot demonstrate that the change in her supervisors constituted an adverse employment action. CGI contends that even if Childrey could

---

[6] For the purpose of the remaining retaliation claim, Childrey contends that the protected activity was her reporting McCall in August 2012. The allegedly retaliatory action occurred in October 2012 when Robert Patterson was assigned as her supervisor because at that time, McCall's son Benjamin became a team leader.

11

establish a *prima facie* case of retaliation, Childrey cannot demonstrate that the reason for changing her supervisors was pretextual.

The court concludes that Childrey has failed to demonstrate that there exists a genuine dispute of material fact regarding whether she suffered any adverse employment actions sufficient to survive the defendant's motion for summary judgment.

> An "adverse employment action" under Title VII is "a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). . . . "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id*.

*Coles v. Post Master Gen. United States Postal Servs*., No. 16-15364, 2017 WL 4271111, at *4 (11th Cir. Sept. 26, 2017). "[T]o support a claim under Title VII's anti-discrimination clause the employer's action must impact the "terms, conditions, or privileges" of the plaintiff's job in a real and demonstrable way." *Davis*, 245 F.3d at 1239.

It is undisputed that Childrey's entire team was placed under the supervision of Robert Patterson in October 2012. Although Childrey contends that this move was in retaliation for her complaint about sexual harassment, she does not point to or otherwise provide the court with any evidence to substantiate her allegations. Her argument is pure speculation.

More importantly, however, she does not point to any tangible consequence that resulted from the change in supervisors. Childrey suffered no reduction in salary or loss of benefits. She was not demoted or denied a promotion. Her job responsibilities did not change nor was she transferred to another position or location. Consequently, the court concludes that Childrey has

failed to establish that the assignment of Patterson as her supervisor constituted a "*serious and material* change in the terms, conditions, or privileges of [her] employment" sufficient to constitute an adverse employment action. *See Davis*, 245 F.3d at 1239.

Even assuming Childrey could establish a *prima facie* case, she cannot establish that her complaint was the but-for cause of the change in supervisors. Nor can she establish that the defendant's reason for changing team supervisors was pretextual. Once the plaintiff makes out a *prima facie* case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997). If the defendant offers a legitimate reason for the adverse employment action, the presumption of retaliation disappears. *Id*. The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct. *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

CGI asserts that Childrey's entire team was moved under the supervision of Robert Patterson because the team "was experiencing issues and management believed that Robert would do a better job managing the members and their performance." (Doc. #92, Ex. B at 3, ¶ 6). This is a legitimate, non-retaliatory reason for placing Childrey and the rest of the team under Patterson's supervision. Childrey offers no facts to dispute CGI's reason for the change in management. At this junction, Childrey must now present some evidence to rebut the defendant's reason for changing her supervisor. It is here that her retaliation claims fail.

> If the employer does so, the plaintiff must rebut that reason with evidence showing that it is a pretext for illegal discrimination. *See Id.* This requires "significant probative evidence" of pretext, not mere conclusory allegations. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996) (quotation marks and citation omitted). Further, the focus is on the employer's beliefs rather than the employee's own perceptions. *See Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir. 1997) (per curiam).

*Lockett v. Choice Hotels Int'l., Inc.*, 315 F. App'x 862, 868-69 (11th Cir. 2009).

Given CGI's reason for changing Childrey's supervisor, Childrey must shoulder the burden of demonstrating pretext, and she does not. At best, her arguments are merely conclusory restatements of her grievances which do not show that the defendant's reason is unworthy of belief. To defeat the motion for summary judgment, Childrey must present evidence creating a genuine issue of material fact. At best, she presents nothing more than her unsubstantiated allegations and conclusory statements that the change in her supervisors must have been a "planned tactic" designed to retaliate against her. "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc*., 833 F.2d 1525, 1529 (11th Cir. 1987). *See, e.g., Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value).

Childrey concedes that her working relationship with her co-workers began to deteriorate as early as June or July, 2012. She did not complain about McCall until August 2012. Although Childrey requested to be moved to a different team because of the conflict within her team, there is no evidence from which the court could conclude that CGI's assignment of Patterson as her

14

supervisor was in retaliation for her complaining about McCall's sexual harassment.  Childrey

has failed to demonstrate that any genuine dispute of material fact exists from which a reasonable

fact finder could conclude that Patterson was placed in a supervisory position over her in

retaliation for complaining about McCall.  CGI is entitled to summary judgment on the plaintiff's

retaliation claim.

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the

defendant's motion for summary judgment on Childrey's retaliation claim be granted and that

this case be dismissed with prejudice with costs taxed against the plaintiff.

It is further

ORDERED that **on or before January 23, 2018**, the parties may file objections to the

Recommendation.  Any objections filed must specifically identify the findings in the Magistrate

Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general

objections will not be considered by the District Court.  The parties are advised this

Recommendation is not a final order; therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the

Magistrate Judge's Recommendation shall bar the party from a de novo determination by the

District Court of issues covered in the Recommendation and shall bar the party from attacking

on appeal factual findings in the Recommendation accepted or adopted by the District Court

except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404

(5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11thCir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 9th day of January, 2018.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE