IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| ZEFFIE CHILDREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:14cv616-MHT |
| | ) | (WO) |
| CGI TECHNOLOGIES AND SOLUTIONS, | ) ) | |
| | ) | |
| Defendant. | ) | |

OPINION

Plaintiff Zeffie Childrey filed this lawsuit asserting sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 et seq. This cause is before the court on the recommendation of magistrate judge that defendant CGI Technologies and Solutions' summary judgment motion as to Childrey's "October 8 retaliation claim"--the only claim remaining in the case--be granted.[1] For the reasons stated below, the court agrees

---

1. This court in a previous order incorrectly referred to this claim as the "October 12 retaliation claim." *Childrey v. CGI Techs. & Sols.*, No. 2:14cv616,

with the recommendation although it does not adopt the reasoning fully. The court concludes that Childrey's reassignment to a position to be led by the son of her alleged harasser does constitute an "adverse employment action," and that she has stated a prima-facie case for retaliation under Title VII. Nevertheless, Childrey's claim fails as a matter of law because she has not produced sufficient evidence for a jury reasonably to conclude that CGI's proffered reason for her reassignment was pretextual. The motion for summary judgment as to this final remaining claim will therefore be granted.

I. Background

A. Procedural Background

Childrey brought suit in federal court against CGI charging sexual harassment and retaliation in violation of Title VII. Childrey twice amended her complaint. Her

---

2017 WL 4365161, at *1 (M.D. Ala. Sept. 29, 2017) (Thompson, J.). However, as the magistrate judge's most recent recommendation clarified, the alleged retaliatory action--reassigning Childrey to be led by Willie McCall's son--occurred on October 8, 2012. *See* Report and Recommendation (doc. no. 126) at 8.

counsel withdrew from the case, after which she proceeded pro se. After discovery, CGI filed a motion for summary judgment, to which Childrey responded.

The magistrate judge issued a recommendation concluding that the motion for summary judgment should be granted in its entirety and that the case should be dismissed with prejudice. *See Childrey v. CGI Techs. & Sols.*, No. 2:14cv616, 2016 WL 9751962 (M.D. Ala. Mar. 7, 2016). Childrey timely objected to the recommendation. *See* Objection (doc. no. 115). This court then entered an order adopting in part and rejecting in part the recommendation. *See Childrey v. CGI Techs. & Sols.*, No. 2:14cv616, 2017 WL 4365161 (M.D. Ala. Sept. 29, 2017) (Thompson, J.). As the order explained,

> "It appears that defendant and the magistrate judge have overlooked a claim asserted by plaintiff, viz., that defendant transferred plaintiff in October 2012 to work under the authority of Benjamin McCall and others, and that this act constituted retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq. *See* Am. Compl. (doc. no. 47) ¶ 21(d). Rather, defendant and the magistrate judge appear to address only plaintiff's claim that defendant's failure to transfer her promptly away from that new

3

assignment constituted retaliation. *See* Report & Recommendation (doc. no. 112) at 24-25."

*Id.* at *1. Accordingly, while the court adopted the recommendation granting CGI's motion for summary judgment as to all other claims, it referred this remaining claim back to the magistrate judge for appropriate resolution "on a renewed summary judgment or otherwise." *Id.*; *see also* Order (doc. no. 119) (granting leave to file renewed motion for summary judgment). CGI then filed a renewed motion for summary judgment as to the outstanding claim.

The magistrate judge issued a second recommendation concluding that the renewed motion for summary judgment should be granted. *See* Second Report and Recommendation (Second R&R) (doc. no. 126). Specifically, the magistrate judge found that Childrey failed to establish a prima-facie case of retaliation because "[she] has failed to demonstrate that there exists a genuine dispute of material fact regarding whether she suffered any adverse employment actions sufficient to survive the defendant's motion for summary judgment." *Id.* at 12. The magistrate judge further concluded that, even if Childrey could

4

establish a prima-facie case, her claim fails because she did not offer any facts to show that CGI's stated reason for the reassignment was merely a pretext for retaliation. *Id.* at 13.

Childrey requested, and the magistrate judge granted, two extensions for time to file objections to the magistrate judge's second recommendation. *See* Order Granting Extension (doc. no. 130); Order Granting Extension (doc. no. 128). However, she did not submit any objections nor any further requests for an extension.

### B. Factual Background

The facts relevant to this opinion are as follows:[2] CGI is a professional services company dedicated to providing IT solutions and business process outsourcing services to commercial clients and federal, state, and local government agencies. Childrey was hired by CGI on April 16, 2012, as an IT specialist for a CGI team

---

2. The first and second recommendations set forth more detailed factual background. *See* Second R&R (doc. no. 126) at 6-10; *Childrey*, 2016 WL 9751962 at * 3-4.

providing support services for the Federal National Mortgage Association (Fannie Mae). Her supervisor at the time of hiring was Calvin Patterson, and Lynn Engram was the overall manager for the teams supporting Fannie Mae's operations.

On August 15, 2012, Childrey left work and encountered her co-worker Willie McCall at the bottom of a stairwell. McCall had made a number of sexual advances to Childrey prior to that date, which she had consistently refused. As they passed in the stairwell, McCall grabbed Childrey's buttocks. She then immediately called Patterson, and reported McCall's behavior. The next day a human resources representative from CGI contacted Childrey about the incident. She explained what happened and told the representative about the earlier incidents in which she had rebuffed McCall's advances. She told the representative that she wanted McCall to understand that his behavior would not be tolerated and had to stop, but she also said she could "move forward as a colleague."

Beginning in June or July 2012, Childrey's working relationship with her entire team began to deteriorate. After her complaint in August about McCall, Childrey's contentious relationship with her teammates escalated. On October 2, 2012, she asked Patterson to move her to another team.  On October 8, her team was placed under another supervisor, and McCall's son was designated as her team leader. On December 8, 2012, Childrey contacted the EEOC to file a charge of discrimination, and on February 13, 2013, she filed an EEOC complaint alleging sex discrimination and retaliation.  After a series of negative incidents involving her coworkers and supervisors--which were the subject of additional claims for which this court previously granted CGI summary judgment--Childrey resigned her position on December 1, 2013, due to "intolerable working conditions."

## II.  Standard of Review

District courts review de novo any part of a magistrate judge's recommendation to which a party has properly objected. *See* Fed. R. Civ. P. 72(b)(3).  "[T]he

district judge may accept, reject, or modify the recommended disposition." *Id*. The district court reviews for clear error the portions of a recommendation to which no party has objected. See *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (citing Fourth, Fifth, and Seventh circuit case law to this effect); *see also Peretz v. United States,* 501 U.S. 923, 939 (1991) (stating that 28 U.S.C. § 636(b)(1) "provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations") (emphasis added). Because Childrey has not filed an objection to the magistrate judge's recent recommendation, the court reviews the recommendation for "clear error" rather than de novo.

### III. Discussion
#### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

8

of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for its motion and the relevant portions of the record that demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant to show that a genuine dispute of material fact exists. *Id.* at 324. "A material fact is one that might affect the outcome of the suit under the governing law," and is in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A plaintiff may establish a prima-facie case for retaliation under Title VII by demonstrating that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse-employment action; and (3) a causal link exists between the protected activity and the adverse action. *See Bryant v. Jones*, 575 F.3d 1281, 1307-08 (11th Cir. 2009).

An adverse-employment action is a materially adverse action, such that "[the action] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "Trivial harms" and "petty slights" are not enough. *Entrekin v. City of Panama City Fla.*, 376 F. App'x 987, 995 (11th Cir. 2010) (citing *Burlington*, 548 U.S. at 68). The asserted impact must be "serious and material," such that it is "materially adverse as viewed by a reasonable person in the circumstances"; "the statute does not require proof of direct economic consequences in all cases," provided that the impact is not "speculative." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis omitted). "*Burlington* ... strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions."

*Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008).

Once the elements of a prima-facie case are established, they create a presumption that the intent to retaliate was the cause of the adverse action. *See Bryant*, 575 F.3d at 1308. Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the burden of production then shifts to the defendant to rebut the presumption of the prima-facie case by providing a legitimate, non-retaliatory reason for the adverse-employment action. The plaintiff may then prevail by demonstrating that the defendant's proffered reason was pretextual, and that the reason for the defendant's actions was in fact retaliation. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). A plaintiff may also defeat a summary-judgment motion by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

## B. Application

The magistrate judge's second recommendation found that Childrey failed to establish a prima-facie case of retaliation based on the designation of McCall's son as her team lead because she failed to raise a genuine dispute of material fact as to whether this action constituted an adverse-employment action. *See* Second R&R (doc. no. 126) at 12. As the recommendation explained,

> "[S]he does not point to any tangible consequences that resulted from the change in supervisors. Childrey suffered no reduction in salary or loss of benefits. She was not demoted or denied a promotion. Her job responsibilities did not change nor was she transferred to another position or location. Consequently, the court concludes that Childrey has failed to establish that the assignment [to another] supervisor constituted a '*serious and material* change in the terms, conditions, or privileges of [her] employment' sufficient to constitute an adverse employment action."

*Id.* at 12-13.

The court disagrees with the recommendation's conclusion, particularly at the summary-judgment stage, that CGI's reassignment of McCall's son to be Childrey's

team leader was not an adverse-employment action. Childrey complained in August to her then-supervisor Patterson, as well as to CGI's human resources representative, about McCall's grabbing her buttocks and engaging in other unwanted sexual advances. At her request, CGI promptly reprimanded McCall, such that CGI made him aware of the complaint. Soon after Childrey's request to be transferred, CGI replaced her supervisor and designated the son of the man she had recently accused of sexual harassment as her immediate team leader.

The court finds that a jury could conclude that being reassigned to work under the authority of the son of one's alleged harasser is "tangible" and "materially adverse as viewed by a reasonable person in the circumstances," *Davis*, 245 F.3d at 1239, such that it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 57. Moreover, because this action could be reasonably viewed as constituting "more than the most petty and trivial actions against an employee," the

question should have at least been submitted to a jury rather than decided in CGI's favor at summary judgment. *Crawford*, 529 F.3d at 973 n.13.

Because there is a dispute as to whether Childrey engaged in statutorily protected activity by complaining to CGI about McCall's activities, the court turns to the third and final element of establishing a prima-facie case of retaliation: whether there was a causal link between the protected activity and the adverse-employment action. *See Bryant*, 575 F.3d at 1307-08.

"[T]he burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action," but that "mere temporal proximity, without more, must be very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d. 1361, 1364 (11th Cir. 2007) (internal quotation marks omitted). The Eleventh Circuit Court of Appeals has held that a three- to four-month gap between the protected activity and the adverse action is too long to alone establish causation. *Id.* On the other hand, it has held

that seven and eight weeks is sufficiently proximate to create a causal nexus. *See Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks sufficient); *Berman v. Orkin Exterminating Co., Inc.,* 160 F.3d 697, 702 (11th Cir. 1998) (holding that adverse-employment action taken between five weeks and "a couple of months" of plaintiff's filing of an EEOC complaint was sufficient to establish a causal connection); *see also McCarley v. City of Northport*, 240 F. Supp. 3d 1242 (N.D. Ala. 2017) (Proctor, J.) (eight weeks and two days sufficient); *Johnson v. Baptist Health S. Fla., Inc.*, No. 16-23029-Civ, 2017 WL 2988275 (S.D. Fla. June 14, 2017) (Altonaga, J.) (eight weeks sufficient); *Comerford v. Potter*, No. 8:08-cv-648, 2011 WL 6181848 (M.D. Fla. Dec. 13, 2011) (Covington, J.) (nine weeks sufficient); *Williams v. Alabama Indus. Dev't Tr'g*, 146 F. Supp. 2d 1214, 1222 (M.D. Ala. 2001) (De Ment, J.) (ten weeks sufficiently close for a jury to infer causation).

This court has concerns about adopting a bright-line rule that three months is too long to establish a likely causal connection but that two months is not. First, as this court has previously observed, "any employer could simply wait out that period before retaliating." *Burton v. Ala. Dept. of Agric. & Indus.*, 587 F. Supp. 2d 1220, 1234-35 (M.D. Ala. 2008) (Thompson, J.). Second, because of "the context-dependent nature of the retaliation inquiry after *Burlington* and the Court's sensitivity to the exigencies of real employment environments, courts must be prepared to examine context in determining whether a given action is sufficiently temporally proximate." *Id.* at 1235. That is, even where there is no separate evidence of causation and the plaintiff relies on temporal proximity alone, it would appear that other circumstantial evidence--such as the nature of the business, and how employment decisions are made--would be relevant in determining the length of time that may establish causation, such that a bright-line cutoff is inappropriate. For instance, in a large business in

which employment decisions must run through multiple levels of review or communication, a longer period might be sufficient.

Nevertheless, here the court must conclude that, under circuit law, the seven weeks and five days between Childrey's complaint to Patterson on August 15, 2012, and her supervisor reassignment on October 8, 2012, is sufficiently close to establish a likely causal nexus.

Because Childrey has established a prima-facie case of retaliation, the burden shifts to CGI to rebut the presumption of retaliation by articulating a legitimate non-retaliatory reason for the adverse action. *See Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997). Because CGI "need only produce, not prove, a nondiscriminatory reason, this burden is 'exceedingly light.'" *Walker v. NationsBank of Fla. N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995) (quoting *Perryman v. Johnson Prods. Co.,* 698 F.2d 11348, 1142 (11th Cir. 1983). If CGI offers a legitimate reason, the presumption of retaliation disappears and Childrey must then show by a

preponderance of evidence that CGI's proffered reason for taking the adverse action was in fact pretext for the alleged retaliation. *See Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

CGI asserts that it moved Childrey's team under a new supervisor, with McCall's son as her designated team leader, because the team "was experiencing issues and management believed that [new supervisor] would do a better job managing the members and their performance." While almost perfunctory in nature, this explanation is sufficient to meet CGI's light burden of production--particularly in light of Childrey's own statements that the team was experiencing significant problems such that its working relationships had deteriorated--and to shift the burden back to Childrey to show pretext. The court agrees with and adopts the magistrate judge's recommendation's finding that "Childrey offers no facts to dispute CGI's reason for the change in management," in order to demonstrate pretext. Second R&R at 13. Moreover, she has not established "a

convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *See Smith*, 644 F.3d at 1328. Accordingly, Childrey's retaliation claim fails, and CGI's motion for summary judgment as to her remaining retaliation claim should be granted.

## IV. Conclusion

Upon an independent and de novo review of the record in this case, the court concludes that the magistrate judge's recommendation should be adopted.

An appropriate judgment will be entered.

DONE, this the 28th day of March, 2018.

                        /s/ Myron H. Thompson
                        **UNITED STATES DISTRICT JUDGE**